UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALFONZO WELLS, JR.

                   Plaintiff,

    v.                                          Case No. 20-cv-1107-pp

SGT ANDERSON, SGT CLOPE,
SGT HESTHEAVEN, SGT MORRIS,
DEPUTY REED, DEPUTY HARRINGTON,
DEPUTY GREEN, CAPTAIN FRIEND,
SHERIFF CHRISTOPHER P. SCHMALING,
MEDICAL STAFF JULIE AND LEITECHA,
SGT GONZONLEZ, and DEPUTY DONOVAN,

                   Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 9), DENYING AS MOOT PLAINTIFF'S ADDITIONAL MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NOS. 13, 15), DENYING PLAINTIFF'S REQUESTS FOR RECRUITMENT OF COUNSEL (DKT. NOS. 8, 16, 18) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Alfonzo Wells, Jr., who previously was incarcerated at the Racine County Jail and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants held him against his will, mistreated him and abused him in violation of his civil rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 9, 13, 15, and to appoint counsel, dkt. nos. 13, 15, 16 and 18, and screens his complaint, dkt. no. 1.

1

## I.   Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 9, 13, 15)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the incarcerated person must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 9, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $3.07. Dkt. No. 14. On November 19, 2020, the court received from the plaintiff an affidavit indicating that because of poverty, he was not able to "pay the cost of all 3 actions or special proceeding or initial fee!" Dkt. No. 17. He stated that he had no income, no family support and no public assistance, and that he had had physical and mental disabilities since 2010 that prevented him from working. Id. at 1. The plaintiff stated that he "had one time balance of $35.35" in his account, but $10 was taken to pay medical costs on October 29, 2020. Id. at 2. He stated that he needed the remaining money "to order personal hyg[iene] such as soap, shampoo, toothbrush, toothpaste." Id. The next day—November 20, 2020—the court received the same affidavit from the plaintiff, but this time it had been notarized. Dkt. No. 19.

The plaintiff filed this lawsuit on July 20, 2020. Dkt. No. 1. On October 22, 2020—three months later—the plaintiff filed a trust account statement that

covered the period July 7, 2020 through September 30, 2020.[1] Dkt. No. 10. The statement showed that the plaintiff had a negative account balance of $10.50 as of September 30, 2020. Dkt. No. 10. It showed that two weeks before he filed the complaint in this case, he had a balance of negative $10. Id.

On September 22, 2020, the plaintiff filed a second lawsuit. Wells v. Hestheaven, Case No. 20-cv-1510. Over a month later, on October 28, 2020, he filed a trust account statement in that case; it covered the period from July 7, 2020 through October 6, 2020. Id. at Dkt. No. 13. That statement showed that on October 5, 2020, the plaintiff had received a deposit of $46.05, $10.50 of which was used to cover the negative account balance reflected on the trust account statement he filed in this case. Id. (This explains the $35.55 account balance the plaintiff mentioned in his affidavit.) An additional $2.25 was used to pay for phone time and "Property Misc." Id. The statement showed that as of October 6, 2020, the plaintiff's account balance was $33.30. Id.

On October 5, 2020, the plaintiff filed a third lawsuit. Wells v. Koski, Case No. 20-cv-1557. Two weeks later, on October 22, 2020, he filed a trust account statement in that case. Id. at Dkt. No. 9. That statement was updated through October 14, 2020. It showed that on October 7 and 8, 2020, the plaintiff had spent $2.00 on phone time and that on October 14, 2020 he spent

---

[1] The law required the plaintiff to file a statement covering the six months prior to the date he filed the complaint, so the statement should have covered January through June 2020. But in his complaint, the plaintiff stated that he arrived at the Racine County Jail on June 29, 2020. Dkt. No. 1 at 1. It appears that the trust account statement covered the period from the date the plaintiff arrived at the jail until the approximate time he provided the court with the trust account statement.

$0.25 on "indigent property." Id. The statement showed that as of October 14, 2020, the plaintiff's balance was $31.50.

Finally, on December 21, 2020, the plaintiff paid the $3.07 initial partial filing fee in the last case—Case No. 20-cv-1557.

Under 28 U.S.C. §1915(b)(4), this court has the authority to waive a plaintiff's initial partial filing fee if he lacks both the "assets" and the "means" to pay it. The Seventh Circuit Court of Appeals has explained that "[i]t is not enough that the prisoner lacks assets on the date he files." Newlin v. Helman, 123 F.3d 429, 435 (7th Cir. 1997), overruled in part on other grounds by Walker v. O'Brien, 216 F.3d 626, 628–29 (7th Cir. 2000), and Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir. 2000). If that were the case, an incarcerated person could avoid paying the initial partial filing fee by spending what is in his trust account before filing his lawsuit. For that reason, courts construe the word "means" broadly. An incarcerated person may lack "assets" but still have "means" to pay the fee.

At one time, the plaintiff arguably had the assets to pay an initial partial filing fee. As of October 14—a week before he filed the trust account statement in this case—the plaintiff had $31.50 in his trust account. The court issued the order requiring him to pay the initial partial filing fee on November 9, not quite a month later. But in his November 16, 2020 affidavit, the plaintiff stated that "medical" took $10.00 from his account on October 29, 2020, which, he asserted, took his balance down to $20. Dkt. No. 17 at 2. A month later, on December 21, 2020, the plaintiff paid the initial partial filing fee in one of the

4

three cases; assuming that he did not get any more deposits, that would have taken his balance down to less than $17.00. As the plaintiff pointed out in his affidavit, he needs to purchase hygiene items.

The plaintiff made the choice to file three lawsuits. Normally the court would expect him to be prepared to pay three initial partial filing fees. But given his explanation of his financial status, the financial history reflected in the three trust account statements he has filed and the plaintiff's recent history of living arrangements (discussed below), the court cannot conclude that the plaintiff has either the assets or the means to pay the initial partial filing fee. The court will not require him to pay the initial partial filing fee in this case. The court will deny as moot the plaintiff's second and third motions to proceed without prepaying the filing fee. Dkt. Nos. 13, 15.

The PLRA, however, does not allow the court to waive the $350 filing fee. It says that an incarcerated plaintiff who asks to proceed without prepaying the filing fee is nonetheless "required to pay the full amount of the filing fee." 28 U.S.C. §1915(b). Although the court is waiving the initial partial filing fee in the first two of the plaintiff's cases and granting his motion to proceed without *pre*paying the full filing fee in the last one, he still owes a $350 filing fee in each of the first two cases and a balance of $346.93 in the third one—a total of $1,046.93. He must pay the $350 filing fee for this case over time as he is able.

II.    **Screening the Complaint**

A.    <u>Federal Screening Standard</u>

5

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793,

6

798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B. <u>The Plaintiff's Allegations</u>

The plaintiff named as defendants approximately thirteen sergeants, officers and medical staff at the Racine County Jail. Dkt. No. 1 at 1. He indicated that he came to the jail on June 29, 2020, facing two misdemeanor charges of possession of marijuana and "a disturbance." <u>Id.</u> at ¶2. The plaintiff asserted that this was his first time at the Racine County Jail. <u>Id.</u> at ¶3. He alleged that on July 2, 2020, when he was in an intake cell, unspecified officers escorted him to see a nurse. <u>Id.</u> The plaintiff said that when he got back to the intake cell, his legal papers related to the misdemeanors were moved to the floor. <u>Id.</u> The next few lines of the complaint are cut off or illegible; page one ends with "I picked up my pink," and page two begins with part of a word, followed by "in my cell." <u>Id.</u>

The next readable lines of the complaint alleged that unspecified officers "denied the issue" of writing the plaintiff a "fake court date of 8/06/20." <u>Id.</u> The plaintiff indicated that "somehow," he was able to go court the same day that he confronted "them of the fake court date." <u>Id.</u> The plaintiff said that on July 2, 2020, he was granted a signature bond, but that as of the date he wrote the complaint, he was still being held at the jail "against [his] will and wishes." <u>Id.</u>

7

The plaintiff alleged that he was on parole in Illinois, but that Illinois did not revoke his parole as a result of the two misdemeanors on which he was being held in the Racine County Jail. Id. He also stated that his parole officer was not aware of the charges against him or his complaint. Id. The plaintiff stated that he called his family and friends, who informed him that his picture and fingerprints were not in the Racine County Jail system or database. Id. at ¶4. The plaintiff says that they called his parole officer, who "demand immediate release from custody." Id.

The plaintiff alleged that on July 4, 2020, while he remained in the Racine County Jail, he was having "another medical crisis emergency" and was pressing his emergency call button over 100 times; he says he broke skin off his knuckle from knocking hard on his room window to try to get the officers' attention. Id. at ¶5. He alleged that he could see unspecified officers looking into his cell while he was pressing the button and knocking on the window, but that they did nothing. Id. The plaintiff alleged that he wrote a grievance and wrote to medical and mental but that as of the date he wrote the complaint, they had not responded. Id.

The plaintiff asserted that on July 5, 2020, another unspecified officer in intake "tried to mase and tase" the plaintiff "for not looking up" because the plaintiff asked if he could take a shower because he had not been able to take one in three or four days. Id. The plaintiff said that officers refused and wrote him a disciplinary ticket, for which he was "found guilty." Id. He asserted that it was ordered that officers take his mattress away for twelve days. Id. The

plaintiff explained that he tried to refuse, but that on July 7, 2020, unspecified officers and sergeants "rushed in [his] cell with full SERT body suits on and took [his] mattress." Id. During the incident, an unnamed officer allegedly "grabbed a hand full of [his] penis." Id. The plaintiff alleged that this was the third P.R.E.A. (Prison Rape Elimination Act) incident about which he'd filed a grievance since he'd been there. Id. The plaintiff asserted that he has written over twenty-five requests/complaints but had received responses for only two. Id. The plaintiff stated that as of the day he wrote the complaint, it was his eighth or ninth consecutive day with no mattress, cover, sheets, tissue or time out of his cell to shower or make phone calls. Id. He alleged that he was in a dirty intake cell with bed bugs, and he wrote something illegible about his toilet and sink. Id. He stated that it was very cold "due to Cov-19" and that he was suffering from hypothermia. Id. He indicated that he told the nurse that he was anemic and diabetic and that he'd hardly been out of his cell for an hour in eight or nine days. Id. The plaintiff said that "she" (presumably the nurse) and "Anderson just laughed." Id. The plaintiff stated that he was "enduring sever[e] pain and suffering," that he was in immediate danger and fear for his life. Id. The plaintiff seeks $1.1 million in damages. Id.

C.    Analysis

1.    *The Plaintiff's Location*

The plaintiff alleges that he suffered harm while he was at the Racine County Jail. The plaintiff filed this lawsuit in July 2020 and was in the jail at that time. The court did not promptly screen the case. As a result, the plaintiff

has moved several times since he filed the complaint. On March 8, 2021, the court received from the plaintiff a letter explaining that his new address was the Stateville Correctional Center in Joliet, Illinois. Dkt. No. 25. On May 3, 2021, the court received another change-of-address notice from the plaintiff, indicating that his new address was 600 Linwood Road, P.O. Box 1327, Galesburg, Illinois. Dkt. No. 27. (The court notes that the Hill Correctional Center is located at 600 Linwood Road in Galesburg, Illinois. https://www2.illinois.gov/idoc/facilities/Pages/hillcorrectionalcenter.aspx.) On May 10, 2021, the court received another letter, stating that the plaintiff had been residing at 11001 S. Wentworth Avenue in Chicago since May 8, 2021. Dkt. No. 28. (This is the address of the Cornerstone Recovering Community, a drug rehab facility. https://www.drug-rehab-headquarters.com/illinois/facility/cornerstone-recovering-community-chicago-2/.) Finally, on August 5, 2021, the clerk's office received another change-of-address notice; this one listed only the case number of the plaintiff's third case, Wells v. Koski, Case No. 20-cv-1557. This letter advised the court that the plaintiff's updated address was 126 Odgen Street, Belvidere, Illinois 61008, and that the plaintiff had been at that address since June 1, 2001. Case No. 20-cv-1557 at Dkt. No. 28.

2.    *The Plaintiff's Legal Claims*

As best the court can determine, the plaintiff has alleged six claims. He alleges that someone appears to have moved his legal papers while he was visiting the nurse—perhaps he is arguing that he was denied his right of access

10

to the courts. He alleges that he was held at the jail against his will—perhaps he alleges false imprisonment or unlawful pretrial detention under the Fourth Amendment. He alleges that he had a medical crisis/emergency and that officers saw it but ignored him—this sounds like a claim of denial of medical care. He alleges that officers used excessive force when they used Mace and tasered him for failing to look up after asking to shower. He alleges that he was subjected to unconstitutional conditions of confinement; he says he was subjected to eight or nine days of cold with no mattress or sheets, in a dirty, bug-ridden cell without the ability to shower and that an officer sexually assaulted him.

To state a claim for denial of access to the courts, a plaintiff must allege "that the defendant rendered the plaintiff unable 'to pursue a legitimate' claim." Morris v. Dickman, 791 F. App'x 607, 610 (7th Cir. 2019) (quoting Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 2009)).

To prove false imprisonment under Wisconsin law, a plaintiff must allege that the defendants "confined him without consent or authority." Sasson v. Kravit, 370 Wis.2d 787, *9 (Ct. App. 2016) (citation omitted). An incarcerated person who alleges that he is wrongfully detained as the result of a judicial determination that probable cause existed to detain him cannot sue for damages until he is out of custody. Manuel v. City of Joliet, Ill., 903 F.3d 667, 670 (7th Cir. 2018). A person who seeks immediate release from ongoing state custody must do so through a petition for a writ of *habeas corpus*, not by filing

a civil rights lawsuit under 42 U.S.C. §1983. <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973).

A plaintiff alleging that he was denied adequate medical care must first demonstrate "that he suffered from an objectively serious medical condition." <u>Knight v. Grossman</u>, 942 F.3d 336, 340 (7th Cir. 2019). "[M]edical-care claims brought by pretrial detainees" arise under the Fourteenth Amendment, so a pretrial detainee also must show that the defendants' conduct regarding his serious medical need was "*objectively* unreasonable." <u>Miranda v. Cty. of Lake</u>, 900 F.3d 335, 352 (7th Cir. 2018). The plaintiff must allege that the defendants' actions were "purposeful, knowing, or reckless disregard of the consequences." <u>Id.</u> at 354.

Similarly, a pretrial detainee who claims he was subjected to excessive force must allege that the "force purposely or knowingly used against him was objectively unreasonable." <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 396-97 (2015). Courts determining whether the defendants used "objectively reasonable" force consider factors such as "the relationship between the need for the use of force and the amount of force used," whether the plaintiff was injured, whether the officer tried to limit the amount of force used, the threat the officer perceived and other factors. <u>Id.</u> at 397.

To state a claim for unconstitutional conditions of confinement, a plaintiff must allege that a defendant or defendants subjected him to an excessive risk to his health or safety. <u>Quinn v. Wexford Health Sources, Inc.</u>, ___ F.4th ___, 2021 WL 3485509, at *6 (7th Cir. Aug. 9, 2021) (quoting <u>Farmer</u>

12

v. Brennan, 511 U.S. 825, 837 (1994)). A pretrial detainee who alleges unconstitutional conditions of confinement must "establish that a defendant 'acted purposefully, knowingly, or perhaps even recklessly.'" Self v. Bergh, 835 F. App'x 873, 875 (7th Cir. 2020) (quoting Miranda, 900 F.3d at 353.

Perhaps the plaintiff could state sufficient facts for the court to allow him to proceed on one or more of these causes of action. He has described some events and conditions that sound like they might violate the Constitution. But the plaintiff has not told the court which of the defendants did these things to him. The plaintiff has provided the court with a list of names (the defendants) and a list of alleged violations, but he hasn't matched the defendants with the violations. He alleges that when he returned from seeing the nurse, he noticed that his legal papers had been moved to the floor. But he does not say who moved them, or what effect that had on his ability to proceed in court. He alleged that he was being held against his will in the Racine County Jail, but did not tell the court who it was that he believed was responsible for holding him against his will—the police who arrested him? The guards in the jail? The judge who ordered him detained? He says that on July 4, he saw officers looking in his cell while he was in distress but doing nothing, yet he does not tell the court who those officers were or explain how they knew that he was in medical distress. He does not identify the officer who used Mace and a Taser again him on July 5. He does not say who ordered his mattress taken away from him, or who took the mattress (and sheets and other items). He does not identify the officer who allegedly sexually assaulted him. He does not identify

13

the nurse whom he told that he was suffering. He *does* say that the nurse and "Anderson" just laughed, and he has named a Sgt. Anderson as a defendant. But he does not say what role Anderson played, if any, in denying him humane conditions of confinement.

"A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." <u>Alejo v. Heller</u>, 328 F.3d 930, 936 (7th Cir. 2003) (citing <u>Duncan v. Duckworth</u>, 644 F.2d 653, 655 (7th Cir. 1981)). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." <u>Colbert v. City of Chi.</u>, 851 F.3d 649, 657 (7th Cir. 2017) (citing <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983)). To state a claim for which a federal court may grant relief, a plaintiff must tell the court the name of the person who committed the particular act or acts he complains of.

There are also facts that are missing. If, for example, the court is correct that in describing the moving of his legal papers, the plaintiff seeks to state a claim for denial of access to the court, he has not provided sufficient facts. The simple fact that someone may have moved his legal papers is not enough for the plaintiff to state a claim for denial of access to the courts. He must also demonstrate that the moving of the papers somehow made him unable to pursue his legal rights in his criminal case. In his claim that officers ignored his medical crisis, the plaintiff does not explain what kind of medical crisis he was having, or how the officers who looked in his cell would have known that he was trying to get their attention for medical reasons (and not, for example,

because his toilet was plugged). The plaintiff does need to tell the court every single detail of every event, but he needs to provide enough information for the court to determine whether the defendants engaged in conduct that violated the Constitution, and which defendants did so.

The plaintiff also appears to have tried to add new claims and new defendants to the case over the months after he filed the complaint. Three months after he filed his complaint, the plaintiff filed a motion asking the court to appoint him a lawyer. Dkt. No. 8. Actually, the *first* page of the document asked the court to appoint counsel. Id. at 1. The last three pages appear to be a portion of this court's form complaint (the first page is missing), where the plaintiff alleged that on September 6, 2020 (two months after he filed the complaint) he was exposed to toxic sewage in his cell at the Racine County Jail—a claim he did not raise in the complaint in *this* case, but the claim which forms the basis of his lawsuit in Case No. 20-cv-1557. Id. at 2-4.

Four months after he filed the complaint in this case, the plaintiff filed two affidavits. Dkt. Nos. 20, 21. These affidavits allege additional facts about events that took place after the plaintiff filed his complaint. For example, in one affidavit the plaintiff alleges that C.O. Noonan—who is *not* a defendant in any of the three cases—knowingly exposed him to the COVID-19 virus in September 2020. Dkt. No. 20 at 1. In the other, he alleges that named and unnamed officers—again, officers who are not defendants in any of the three cases—were retaliating against him by opening his mail and taking other actions. Dkt. No. 21. In the top, right-hand corner of these affidavits, the

plaintiff listed the case numbers for all three of his pending cases, so the clerk's office filed the affidavits in all three cases, even though they involved defendants who were not named in any of the three lawsuits. He also filed an affidavit dated January 8, 2021, again listing all three case numbers, reiterating the claims in this complaint but adding details. Dkt. No. 24 at 2-3.

This "piecemeal" approach is inappropriate and confusing for several reasons. First, once a plaintiff has filed his complaint, if he wants to add more details or clarify something or add a defendant, the proper way to do it is to file an amended complaint as described in Federal Rule of Civil Procedure 15. That rule allows a plaintiff to amend his complaint one time without asking the court's permission. After that, he must file a motion asking the court to give him permission to make further amendments. This court's Civil Local Rule 15(a) requires a party to "reproduce the entire pleading as amended." This way, rather than the court looking at three or four different documents to figure out all the facts the plaintiff wants to allege, it need look at only one document—the amended complaint.

Second, the plaintiff did not use this court's complaint form. If he had, he would have been able to see from the form the information the court needed. The court is sending with this order the court's amended complaint form and its Guide to Filing Prisoner Complaints Without a Lawyer in The United States District Court for the Eastern District of Wisconsin. The plaintiff must use this form if he chooses to amend the complaint.

Third, the affidavits at Dkt. Nos. 20 and 21 describe events that occurred after the date the plaintiff filed this lawsuit. A plaintiff may not pursue in the same lawsuit events that occurred after he filed that lawsuit unless those events "relate[] back to the date of the original pleading." Fed. R. Civ. P. 15(c). In other words, the events that happened later must have arisen out of the same conduct, transaction or occurrence set out in the original complaint. Fed. R. Civ. P. 15(c)(1). The events the plaintiff described in the amendments do not relate back to the claims he stated in the complaint in this case—they involve different officers, took place on different dates and involve different occurrences or events. The plaintiff must bring each of those claims in a separate lawsuit. The fact that all the events the plaintiff describes occurred while he was in the Racine County Jail is not sufficient to relate the claims back to the original complaint.

Fourth, by filing the affidavits in all three of his cases, the plaintiff appears to be trying to litigate the same claims in three cases at once. A party cannot litigate the same issue in multiple cases; whichever case is resolved first will "preclude" re-litigation of the resolved issues in the other cases. See, *e.g.*, Waagner v. United States, 971 F.3d 647, 657 (7th Cir. 2020). If the plaintiff wishes to state a claim against C.O. Noonan for allegedly purposefully exposing the plaintiff to the COVID-19 virus, he must file a new complaint—which will result in a new $350 filing fee—against C.O. Noonan.

Fifth, a plaintiff may not raise unrelated claims against different defendants in the same case. See George v. Smith, 507 F.3d 605, 607 (7th Cir.

2007); Fed. R. Civ. P. 18(a) and 20(a)(2). Under Rule 18(a), a plaintiff may bring multiple claims against the same defendant in one lawsuit. So, for example, the plaintiff may sue Defendant 1 for Claims A, B, C and D. Under Rule 20(a)(2), a plaintiff may bring the same claim against multiple defendants in one lawsuit. So, for example, a plaintiff may sue Defendants 1, 2, 3, 4 and 5 in the same lawsuit if all of them were allegedly involved in the violation stated in Claim A.

> [B]ut Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a] 50-claim, 24-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.

George, 507 F.3d at 607.

The court will dismiss this complaint, but it will give the plaintiff a chance to file an amended complaint that addresses the problems identified in this order. The plaintiff first should decide which claim or claims he wants to pursue in this case. If he wants to pursue more than one claim in this case, and all those claims involved the same defendant or defendants, he may bring them all in this case. But he must file a separate lawsuit for each claim that involves different defendants.

Once the plaintiff has decided which claim or claims he wants to pursue in this lawsuit, he must use the enclosed amended complaint form. He must list the case number for this case on the first page. He must list the names of all the defendants he wants to sue *in this case* in the caption of the amended complaint. He should use the spaces on pages two and three to state the key

18

facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court back to his original complaint and instead must include in the amended complaint any of the facts from the original complaint that are necessary to his claims. The plaintiff also should avoid writing at the very edges of the paper. Words at the bottom, top or side edges can get cut off when a document is scanned into the court's computerized case management system. A number of the documents the plaintiff filed in this case had words or sentences cut off because the plaintiff wrote too close to the edge of the paper.

The plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights? (He must provide the name of the person; if he does not know the person's name, he may refer to the person as "John Doe" or "Jane Doe" with some description, such as "John Doe sergeant, a white female on duty in the late afternoon on July 4."); 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant

with notice of what that defendant allegedly did or did not do to violate the plaintiff's rights.

If the plaintiff files an amended complaint that complies with these instructions by the deadline the court sets at the end of this order, the court will screen it and decide whether it states a claim.

Finally, the plaintiff must not list all three of his pending case numbers on every document he files with the court unless the document relates to all three cases (such as a change-of-address notice). Before he files a document, the plaintiff must decide which case it relates to. He must write the case number for that case—and only that case—on the document. When the court receives that document, the clerk's office staff will file the document in the case with that case number. If the plaintiff does not put a case number on a document or if (as he did with the affidavits) he puts all his case numbers on a single document, the court may direct the clerk's office to return the document to the plaintiff unfiled and instruct him to select one case in which to file it.

## III. Motions for Recruitment of Counsel (Dkt. Nos. 8, 16, 18)

The plaintiff filed three motions asking the court to appoint a lawyer to represent him. Dkt. Nos. 8, 16, 18 (documents 16 and 18 are identical.) The plaintiff stated that he was indigent. Dkt. No. 8 at 1. He stated that he had been writing to "multiple of attorneys across the State of Wisconsin" but that he had not received any responses; he said that he wrote to several law firms asking to be appointed counsel "through the City of Milwaukee, Wisconsin of legal counsel (pro-bono) through the Courts." Id. He asserted that the Racine

County Jail had been tampering with his mail. Id. Finally, he stated that he understood that if the court appointed a lawyer but it turned out he was able to pay, the lawyer would share that fact with the court, and he stated that he understood that if he made any false statements in his request for counsel, his case would be dismissed. Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish et al., 923 F.3d 486, 490 (7th Cir. 2019) (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers'

names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second element, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not demonstrated that he made a good-faith effort to find a lawyer on his own. He has not provided the court with the names of any of the lawyers or law firms he contacted or explained when he did so. Even if he had, the court would not appoint him a lawyer at this point in the case. As the court has explained, it is dismissing this complaint and giving the plaintiff the opportunity to file an amended complaint that either states one claim against multiple defendants or states several claims against the same defendants. The

22

plaintiff—despite his physical and mental issues—ought to be able to select a claim and state the who, what, when and where information the court needs to evaluate it. If the plaintiff files an amended complaint that complies with this order and the case moves forward, the plaintiff may renew his request for an attorney if and when he feels that the procedures have become to complicated for him to handle on his own.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee and **WAIVES** the requirement that the plaintiff pay an initial partial filing fee. Dkt. No. 9.

The court **DENIES AS MOOT** the plaintiff's second and third motions to proceed without prepaying the filing fee. Dkt. Nos. 13, 15.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's requests for appointment of counsel. Dkt. Nos. 8, 16, 18.

The court **DIRECTS** the Clerk of Court to update the plaintiff's address to 125 Ogden Street, Belvidere, IL 61008. The court will send all future mail to the plaintiff at that address.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **October 8, 2021**. If the plaintiff files an amended complaint in

23

time for the court to receive it by the deadline, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on October 8, 2021, the court will dismiss this case based on the plaintiff's failure to state a claim in the original complaint and will issue the plaintiff a "strike" as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the plaintiff must pay the $350 filing fee as he is able.

The plaintiff must send each original document he wishes to file to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he moves or changes his address. The plaintiff's failure to keep the court advised of his current address may result in the court dismissing this case without further notice.

24

The court includes with this order the amended complaint form and accompanying Guide and a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin, this 13th day of September, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**